*In re* M.B., a Minor, Respondent-Appellee (The People of the State of Illinois, Petitioner-Appellee, v. Yvette Neal, Respondent-Appellant).

First District (3rd Division)    No. 1—01—1289

Opinion filed July 17, 2002.

Bruce H. Bornstein, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jennifer Streeter, and Nancy Grauer Kisicki, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Lisa D. Huge, of counsel), guardian *ad litem*.

JUSTICE CERDA delivered the opinion of the court:
Following an adjudicatory hearing upon the petition of petitioner,

the People of the State of Illinois (State), the circuit court found respondent M.B., the minor daughter of respondent, Yvette Neal, and Mark B., who is not party to this appeal, neglected and abused pursuant to section 2—3 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3 (West 2000)). At a subsequent dispositional hearing, the court adjudicated M.B. a ward of the court, found respondent unfit and unable as a parent, and directed M.B. placed with the Department of Children and Family Services (DCFS). Respondent now appeals, challenging the circuit court's finding of unfitness. For the following reasons, we affirm.

## BACKGROUND

### State's Petition

On May 16, 2000, the State filed a petition seeking an order adjudicating M.B. a ward of the court on the grounds she had been neglected and abused and was dependent pursuant to sections 2—3 and 2—4 of the Act, respectively. The State's petition specifically asserted M.B. had been physically abused by her natural father Mark B. on or about May 12, 2000, when Mark B. repeatedly struck M.B. with a belt, causing significant bruising over a majority of M.B.'s body. The petition further alleged: M.B. was neglected as her living environment "was injurious to her welfare" in that she had been in prior DCFS custody following a finding of abuse or neglect against respondent; that Mark B. was no longer willing to care for his child; and that the whereabouts of respondent were unknown.

Following a temporary custody hearing, the circuit court found probable cause to conclude that M.B. was abused, neglected and dependent as alleged in the State's petition. M.B. was ordered removed from the custody of her father and placed in the temporary custody of DCFS, which was directed to prepare a case plan regarding M.B.'s situation.

Respondent's whereabouts were eventually ascertained, and following the appointment of counsel, respondent's appearance in the matter was filed on May 24, 2000.

### DCFS' Initial Service Plan and Family Case Conference

Caseworker Melba Mars issued the initial service plan on July 17, 2000. The plan recited the underlying allegations of the State's petition and disclosed that Mark B., as well as his paramour, had pleaded guilty to criminal charges in connection with the incident.

Mars' report additionally noted the past incident of abuse upon M.B. by respondent in late 1995. In this regard, the report stated respondent had been alleged, along with her then-boyfriend and now

husband Lamone Neal, of physically abusing M.B. by dragging M.B. on a carpet and striking the child with a brush and belt. Respondent was further alleged to have exposed M.B. to a risk of harm in connection with allegations that Mr. Neal had sexually abused M.B.

The record establishes that an adjudicated finding of neglect and physical abuse was entered against respondent in March 1996. The case was ultimately closed on June 26, 1997, when M.B. was placed in the custody of her father. DCFS' investigation did not disclose whether any adjudicated findings of sexual abuse were made against Mr. Neal.

Mars' report recommended the family undergo services to provide M.B. with a safe and stable living environment and stated a goal of returning M.B. to respondent's custody by the end of July 2001. The report opined M.B., who is in the present custody of a maternal aunt and receiving weekly counseling, needs continued individual counseling to address separation and loss, physical and sexual abuse issues, and defiant behavior. M.B. additionally requires psychological evaluation and family therapy.

Respondent, according to the report, was involved in counseling and requires continued individual counseling, family counseling, and parenting classes. The plan reported respondent has been very involved with her daughter's therapy and has expressed a desire for reunification.

With respect to Mr. Neal, the report suggested a psychological evaluation, individual and family counseling, a substance abuse evaluation, and parenting classes. While Mr. Neal initially declined to participate in the recommended services, he later informed caseworkers he was engaged in individual counseling.

## DCFS' Supplemental Report

In a follow-up report prepared on November 1, 2000, Mars indicated the recommended services for the parties had not significantly changed from those listed in the initial service plan. M.B., respondent and Mr. Neal were each stated to be in need of continued individual counseling, and family counseling and parenting classes were specifically recommended for respondent and Mr. Neal. Mars noted respondent continues to be very involved with M.B.'s therapy and has reaffirmed her desire to have M.B. returned to her custody.

In light of the need for ongoing counseling for respondent, as well as Mark B.'s desire to surrender his parental rights, Mars concluded there had been unsatisfactory progress toward the service plan's goal of reunification. Mars specifically noted that while respondent had been cooperative and that her visits with M.B. were satisfactory, she had been unable to engage in the required services due to a complicated

pregnancy and recent birth of a child. Consequently, respondent's progress in her individual, parenting and family counseling was reported to be unsatisfactory. Mr. Neal's progress in the foregoing areas of counseling was likewise deemed unsatisfactory.

While the plan's goal remained reunification, the time for achievement of that goal was delayed until November 30, 2001. According to Mars, M.B.'s reunification was dependent upon respondent and Mr. Neal engaging in further individual, parenting and family counseling sessions to specifically address those issues that led to M.B. being removed from respondent's home back in 1996.

### Adjudicatory Hearing

The adjudicatory hearing was conducted on December 6, 2000. At the hearing, respondent, through counsel, stipulated, in relevant part, that: M.B. had been in the primary custody of her father since June 1997; on May 12, 2000, M.B. reported to investigative authorities that she had been beaten by her father and stepmother after "she got smart with her grandmother"; on the above date, M.B. arrived at the University of Chicago Hospital with a primary diagnosis of physical abuse; hospital personnel reported that M.B. suffered from significant bruising that was consistent with being repeatedly struck with a belt; and Mark B. acknowledged he had beaten M.B. and had pled guilty to one count of misdemeanor domestic battery for which he received one year's conditional discharge. The parties further stipulated that M.B., if called to testify, would detail the nature of her father's attack.

With respect to respondent's 1995 incident of abuse and neglect upon M.B., it was stipulated that: in early 1996, respondent was alleged to have struck M.B. with a brush and dragged her across a carpeted floor, causing M.B. various cuts, welts and bruises; the case was closed in mid-1997, when M.B.'s custody was transferred from respondent to Mark B.; and around the foregoing time period, respondent was further cited for risk of harm in light of charges of sexual abuse filed against her husband, Mr. Neal. A certified copy of the March 1996 adjudication of neglect and abuse against respondent was accepted into evidence by the circuit court.

At the close of the evidence, M.B. was found to be both abused and neglected by her father within the meaning of section 2—3 of the Act. Respondent was not found to have shared any responsibility for M.B.'s mistreatment.

### Dispositional Hearing

The matter proceeded for disposition in March 2001. Respondent was present with counsel, as was Mr. Neal, who identified himself to the court as respondent's husband.

At the hearing, Mars testified to the indications of physical and sexual abuse, respectively, made against respondent and Mr. Neal in early 1996, and additionally discussed her efforts to offer respondent and Mr. Neal reunification services. With respect to the latter matter, Mars indicated respondent has cooperated with her agency regarding all requests for services; has attended all required counseling sessions; and attends supervised visits with M.B. once a week, which M.B. enjoys and during which no unusual incidents have been reported.

Mars stated that while respondent is involved in parenting classes and also receiving individual counseling, those sessions had been suspended due to an unspecified illness with respondent's counselor. Mars further explained family counseling is necessary for respondent, but that respondent would not be able to participate in such counseling until she had successfully completed the parenting classes. In addition, according to Mars, discussions with M.B.'s therapists suggest respondent needs to undergo a parenting assessment, which would commence only after completion of the parenting classes.

Mars specifically discussed M.B.'s present needs and placement with her maternal aunt. According to Mars, M.B.'s placement is both safe and appropriate. M.B. is currently receiving individual counseling to address issues of separation, loss, and past incidents of physical and sexual abuse. Mars indicated that while M.B. is making "some" progress with therapy, that progress has been "very, very slow." "Because right now [M.B.] is in a stable home and *** is unable to go back with her mom or dad at this time," Mars opined it would be in M.B.'s best interests to be adjudged a ward of the court

With respect to M.B.'s father, Mars stated Mark B. has refused all requests to participate in reunification services and has expressed a desire to have his parental rights terminated.

At the close of Mars' testimony, the public guardian, representing the interests of M.B., requested the court to take judicial notice of the March 1996 adjudication of neglect and abuse against respondent, as reflected by the certified copy of adjudication presented at the adjudicatory hearing. Counsel for respondent questioned the relevance of the prior adjudication, arguing that those findings were simply not probative of any issue before the court and, alternatively, irrelevant on grounds of remoteness. Noting the prior adjudication involved the same parties, and specifically stating the prior adjudicatory findings were not unreasonably remote, the circuit court rejected counsel's challenge and noticed the March 1996 adjudicatory order.

In closing, the People requested the court to adjudge M.B. a ward and further urged the court to find respondent unable and unfit based on respondent's prior neglect and physical abuse of her daughter. The

public guardian concurred in the State's proposed findings and likewise asked the court to declare respondent unfit, unable and unwilling not only in light of respondent's previous adjudicated findings, but also in light of the fact that respondent continues to be married to a man who had allegations of sexual abuse made against him.

Counsel for respondent followed by requesting a finding of inability only. According to counsel, the court had no basis to find respondent unfit "based on what happened in a case that was opened five years ago." Counsel also noted that while respondent and Mr. Neal remained married, they were separated and living at different addresses. Counsel stressed respondent has fully cooperated with the supervising agency, has participated in all recommended services and counseling, and has enjoyed visitation with her daughter.

Upon reviewing the evidence, and after a brief discussion with the parties regarding whether respondent and Mr. Neal were truly separated, the court found M.B.'s interests would best be served by adjudicating her a ward of the court. The court additionally found respondent unfit and unable to have custody of M.B.[1] In finding respondent unfit and unable, the court, both at the December 6 hearing and in the formal dispositional order, noted that reasonable efforts aimed at reunification between respondent and her daughter had not been satisfied. The court, however, made it a point to stress reunification efforts were presently ongoing as to respondent. The court terminated its prior temporary custody order and directed M.B. to be placed under DCFS guardianship.

Respondent's timely appeal followed.

## ANALYSIS

█ Pursuant to section 2—13 of the Act, the State may file a petition on behalf of any minor child who is alleged to be neglected, abused or dependent. 705 ILCS 405/2—13 (West 2000). The petition must allege, with sufficient factual detail, the abuse, neglect and/or dependency of the minor and, in cases where the State seeks an adjudication of wardship, as the State did in this case, the petition shall assert that the interests of the minor and public would best be served by having the minor adjudged a ward of the court. 705 ILCS 405/2—13(2), (3) (West 2000). The petition, notably, need not specify any proposed disposition of the matter upon an adjudication of wardship. 705 ILCS 405/2—13(3) (West 2000).

Following the filing of such a petition, the circuit court must hold an adjudicatory hearing solely to determine whether the State's al-

---

[1]Mark B. was similarly determined to be unfit, unable and unwilling.

legations of neglect, abuse and/or dependency are supported by relevant evidence. 705 ILCS 405/2—21(1), 2—18 (West 2000). If, after consideration of the evidence, the court finds the minor abused, neglected and/or dependent (705 ILCS 405/2—21(1) (West 2000)), the court must schedule a dispositional hearing to be conducted in accordance with section 2—22 of the Act to determine whether a declaration of wardship is appropriate. 705 ILCS 405/2—21(2) (West 2000). "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public" that the minor be made a ward of the court. 705 ILCS 405/2—22(1) (West 2000). If such a determination is made, the court must then determine the proper disposition of the matter in light of the health, safety and best interests of the minor and the community. 705 ILCS 405/2—22(1) (West 2000).

■ Section 2—23 of the Act authorizes the circuit court to enter dispositional orders for the custody or placement of abused and neglected minors. 705 ILCS 405/2—23 (West 2000). Of the particular kinds of dispositional orders authorized, a minor found abused, neglected or dependent may be kept in the custody of her parents. 705 ILCS 405/2—23(1)(a) (West 2000). However, "custody of the minor shall not be restored to any parent *** whose acts or omissions or both have been identified, pursuant to subsection (1) of Section 2—21, as forming the basis for the court's finding of abuse or neglect, until such time as a hearing is held on the issue of the best interests of the minor and the fitness of such parent *** to care for the minor without endangering the minor's health or safety, and the court enters an order that such parent *** is fit to care for the minor." 705 ILCS 405/2—23(a)(1) (West 2000).

■ As an alternative to ordering the minor kept in parental custody, the court may place the minor in accordance with section 2—27 of the Act. Section 2—27 provides in relevant part:

"If the court determines and puts in writing the factual basis supporting the determination of whether the parents *** of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents *** the court may at this hearing and at any later point:

* * *

(d) commit the minor to the Department of Children and Family Services for care and service[.]" 705 ILCS 405/2—27(1)(d) (West 2000).

Respondent's primary contention on appeal is that the circuit

court erred in finding her unfit under section 2—27 of the Act. Significantly, respondent does not challenge the circuit court's determination that she was also unable to care for M.B. Indeed, respondent acknowledged at the dispositional hearing her inability to effectively care for her daughter.

■ As the State notes, respondent's concession of being unable to care for M.B. and her failure to challenge the circuit court's determination in that respect renders the issue of whether the court properly found her unfit moot. As explained by this court in *In re Lakita B.*, 297 Ill. App. 3d 985, 992, 697 N.E.2d 830, 835 (1998), the plain language of section 2—27 provides that a minor can be taken away from a natural parent "if that parent is adjudged to be *either* unfit *or* unable *or* unwilling." (Emphasis in original.) In that case, the natural mother of a minor adjudged a ward of the court challenged the circuit court's finding of unfitness but did not attack the court's additional determination that she was unable to care for her minor children. In light of the mother's position on appeal, this court held "[b]ecause respondent *** concedes that the trial court properly found her unable pursuant to section 2—27, this factor alone as a basis for the trial court's judgment is sufficient to support the trial court's judgment and, therefore, the issue of the trial court's additional finding that respondent was unfit is moot." *Lakita B.*, 297 Ill. App. 3d at 992-93, 697 N.E.2d at 835.

Similarly, here, respondent challenges the circuit court's finding of unfitness only and does not assert error in the court's determination that she was unable. Because the court's finding of inability, alone, is sufficient to support the court's judgment, the issue of whether the court's finding of unfitness was proper is mooted.

Assuming *arguendo* the issue of respondent's fitness is not moot, the evidence was nonetheless sufficient to support the circuit court's determination. In gauging one's fitness to act as a parent, the child's best interests are not to be considered. Rather, the focus must be on the parent in question. See *In re Latifah P.*, 315 Ill. App. 3d 1122, 1128, 735 N.E.2d 1004 (2000). Because a determination of unfitness pursuant to section 2—27 does not result in a termination of parental rights, the standard of proof is the less rigorous preponderance of the evidence, and the court's determination of unfitness under that section will be disturbed on review only when found to be against the manifest weight of the evidence. *Lakita B.*, 297 Ill. App. 3d at 994, 697 N.E.2d at 836. A decision is against the manifest weight of the evidence only where a review of the record clearly demonstrates that the opposite conclusion is proper. *Lakita B.*, 297 Ill. App. 3d at 994, 697 N.E.2d at 836.

Respondent argues the circuit court's determination of unfitness is not supported by a preponderance of the evidence where the record establishes she has been compliant with all agency requests and, further, has been greatly involved in her daughter's life and treatment. Indeed, the evidence presented at the dispositional hearing establishes respondent's regular participation in all reunification services as well as her genuine concern for M.B.'s well-being. Notwithstanding, the evidence also establishes that the services deemed necessary for achieving reunification have not been successfully fulfilled by respondent. According to the plan devised by DCFS, the stated goal of reunification is dependent upon respondent, as well as her husband, Mr. Neal, and her daughter, making sufficient progress in designated therapy and counseling sessions that are specifically aimed at rectifying those issues that prompted M.B.'s initial removal from respondent's custody in 1996. As of the date of the dispositional hearing, respondent had yet to complete those sessions. Moreover, the parenting assessment deemed necessary by caseworker Mars has not been conducted.

Respondent claims the circuit court improperly gave weight to the prior adjudicated findings of abuse and neglect issued against her in March 1996. While the court judicially noticed the adjudicated findings, the record indicates the court relied solely on respondent's unsatisfactory progress to buttress its findings. Both at the dispositional hearing and in its formal dispositional order, the court stressed that services aimed at family preservation and reunification have been unsuccessful. Hence, the basis of the court's findings of unfitness and inability was predicated upon respondent's failure to successfully complete the recommended services and not, as respondent asserts, upon her prior adjudicated findings.[2]

Significantly, the record indicates that the prior case for abuse and neglect against respondent was not closed as a result of respondent completing services considered imperative to address and rectify the reasons for her prior mistreatment of M.B. Rather, the case was closed when custody of M.B. was transferred from respondent to the child's natural father. In light of the disposition of the foregoing matter, and

---

[2]Respondent claims reversal is required because the circuit court did not disclose the factual basis of its findings as required by section 2—27 of the Act. As indicated, the circuit court adequately revealed the basis for its ruling by citing respondent's failure to successfully finish the required services. In any event, not only has respondent waived her challenge by not objecting to the circuit court's alleged oversight, section 2—27 does not mandate the court to state the basis of its determination. *In re R.M.*, 283 Ill. App. 3d 469, 472, 670 N.E.2d 827, 829 (1996).

upon assessment of the situation, caseworker Mars concluded that custody of M.B. should be reestablished with respondent only upon respondent undergoing and successfully completing certain recommended services geared specifically at addressing respondent's past mistreatment of her child. While respondent has participated in such counseling, for which respondent should be commended, respondent's involvement has not progressed to that level deemed necessary for reunification. The fact a parent exhibits compliance with recommended services and a willingness to be a good parent is not dispositive and has been held not to warrant reversal of an unfitness or inability finding where the record contains evidence otherwise supporting the circuit court's determination. See *In re April C.*, 326 Ill. App. 3d 245, 259-60, 760 N.E.2d 101, 113 (2001) ("[t]he fact that respondent participated in various recommended services does not persuade us that the trial court's decision [that respondent was unable, unwilling and unfit] was against the manifest weight of the evidence where there was ample evidence that respondent continues to be a threat to the children's safety and has not made sufficient progress in a number of areas"); *Lakita B.*, 297 Ill. App. 3d at 998, 697 N.E.2d at 839 (upholding circuit court's finding of inability and unfitness, despite evidence that the parent had been voluntarily attending therapy sessions and had displayed both a willingness to improve parenting and a desire of reunification, where the parent continued to deny the seriousness of her acts or omissions toward her children and where testimony from DCFS professionals demonstrated that the parent had serious and significant issues to be resolved).[3]

Respondent claims reversal is warranted for the failure of the State's petition to allege her unfitness or to seek an unfitness determination. However, as noted, the Act does not require a petition seeking an adjudication of wardship to specify the proposed disposition of the matter. 705 ILCS 405/2—13(3) (West 2000). Moreover, a parent's fitness may be placed in issue a number of ways under the Act. *Lakita B.*, 297 Ill. App. 3d at 993, 697 N.E.2d at 836; *In re P.F.*, 265 Ill. App. 3d 1092, 1100, 638 N.E.2d 716, 722 (1994). As explained, custody of a child found to be abused or neglected may not be restored to the parent whose acts form the basis of the court's abuse or neglect determination "until such time as a hearing is held on the issue of the

[3]Because respondent's failure to successfully complete the recommended services, alone, sufficiently supports the circuit court's finding of unfitness, it matters not whether the court additionally relied on either the prior adjudicated findings of abuse and neglect or respondent's continued marriage to Mr. Neal.

best interests of the minor and the fitness of such parent \*\*\* to care for the minor." 705 ILCS 405/2—23(a)(1) (West 2000). By virtue of section 2—23, a parent found to have abused or neglected her child, and who seeks to maintain or, as here, reestablish custody, is placed on notice that her parental fitness will be at issue during the circuit court's dispositional hearing. Thus, the parent seeking custody is constructively apprised that her fitness to care for her child will have to be determined.

Given the manner in which the prior case of abuse and neglect was resolved, and in light of her desire to have M.B. returned to her custody, respondent should have been aware that her fitness would be at issue at the March 2001 dispositional hearing. Respondent, notably, makes no claim that she suffered any prejudice by the State's failure to allege her unfit. In this regard, it must be noted that the State and public guardian plainly asked for a finding of unfitness and inability. In response, respondent never expressed any surprise at the requested findings but, instead, urged for a finding of inability only. See *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896 (1991) (rejecting parent's challenge to the court's dispositional order in light of State's failure to allege unfitness where, *inter alia*, she failed to demonstrate how she was prejudiced thereby).

Lastly, we note that a petition, like the one filed by the State in the present matter, need not contain specific allegations of parental unfitness. Petitions seeking an adjudication of wardship upon allegations of abuse and neglect differ from petitions seeking a termination of parental rights on such grounds. While procedural due process requires notice of alleged unfitness in termination proceedings, such notice is not mandated in dispositional cases. *In re P.F.*, 265 Ill. App. 3d 1092, 1101, 638 N.E.2d 716, 723 (1994); *In re T.B.*, 215 Ill. App. 3d 1059, 1061, 574 N.E.2d 893, 895 (1991).

We are cognizant of *In re B.K.*, 121 Ill. App. 3d 662, 664, 460 N.E.2d 43, 45 (1984), where the appellate court reversed a dispositional order finding a parent unfit for neglecting her children where the State's petition failed to allege the parent's unfitness. Citing the case of *In re Westland*, 48 Ill. App. 3d 172, 362 N.E.2d 1153 (1977), the court explained that in a proceeding to declare a parent unfit, "due process requires that the petition allege that the parent is unfit and set forth with particularity the specific grounds that serve as the basis for such assertion." *B.K.*, 121 Ill. App. 3d at 663, 460 N.E.2d at 45. The court accordingly held that "an assertion of parental unfitness and supporting allegations of the grounds of such unfitness are material and are essential elements of a petition to have parents declared unfit." *B.K.*, 121 Ill. App. 3d at 664, 460 N.E.2d at 45.

We do not share the position expressed in *B.K.* The *B.K.* court never recognized that a State's petition brought under the Act is not required to request a particular disposition. Ill. Rev. Stat. 1981, ch. 37, par. 704—1(3). The court similarly failed to note the provision of the Act that effectively places an abusive or neglectful parent on notice that her fitness would be at issue at the dispositional hearing in the event the parent seeks custody. Ill. Rev. Stat. 1981, ch. 37, par. 705—2(c). Just as noteworthy is that the decision relied upon by the court in requiring specific notice of unfitness, *Westland*, involved a termination, not dispositional, proceeding, in which, as noted, parents are afforded greater notice rights.

While respondent does not challenge M.B.'s placement under DCFS guardianship, the record supports the court's dispositional order and, accordingly, we find no abuse of discretion. See *Lakita B.*, 297 Ill. App. 3d at 994, 697 N.E.2d at 836 (noting the circuit court's selection of a particular disposition is reviewed for an abuse of discretion). Based on the foregoing, we find no error in the court's determination of unfitness and the judgment of the court is hereby affirmed.

Affirmed.

HALL, P.J., and SOUTH, J., concur.