# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re A.P.*, 2013 IL App (3d) 120672

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. King P., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-12-0672 |
| Filed | April 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a combined adjudication and dispositional hearing finding that respondent's minor son was abused and neglected, the additional finding that respondent was unfit to care for the minor was affirmed, notwithstanding the fact that the findings of abuse and neglect were based on allegations against the minor's mother and her boyfriend, since there was evidence that respondent did not participate with the Department of Children and Family Services, he did not complete a social history or integrated assessment, he was awaiting trial for kidnapping the minor and another child, and he had a history of criminal convictions, including violent crimes. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-JA-51; the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Timothy D. McCarthy, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Louise Natonek, of Peoria, guardian *ad litem*.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.

Justices Holdridge and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a combined adjudication and dispositional hearing, the trial court found respondent's minor son, A.P., abused and neglected and found respondent, King P., to be unfit to care for A.P. On appeal, respondent argues that the trial court's finding that he was unfit was against the manifest weight of the evidence. We affirm.

¶ 2                                                    FACTS

¶ 3    On March 17, 2012, the State filed a two-count juvenile petition. Count I alleged that A.P. was abused in that on or about March 6, 2012, when A.P. was four days old, A.P.'s mother's paramour, Samuel Milan, punched A.P. in the head and threw him on a bed. Count II alleged that A.P. was neglected due to an injurious environment, in part, because: (1) Milan punched A.P. in the head and threw him on a bed on March 6, 2012; (2) on the same date, A.P.'s mother and Milan were involved in a domestic violence incident during which Milan hit A.P.'s mother in the head and back and A.P.'s mother stabbed Milan with a knife in his shoulder and cut him on his arm; and (3) A.P.'s mother has mental health problems, including bipolar disorder. The petition contained no allegations against respondent because the State had not yet determined he was A.P.'s legal father.

¶ 4    On April 26, 2012, the court held a combined adjudication and dispositional hearing with respect to A.P.'s mother. At that hearing, the State presented a factual basis for the petition. The State explained that employees of the Peoria police department and the Department of Children and Family Services (DCFS) would testify that on March 6, 2012, A.P.'s mother and Milan were involved in a domestic violence incident. During that incident, Milan punched and hit A.P.'s mother in the head and back and punched A.P. in the head and threw him on a bed. A.P.'s mother then grabbed a knife and stabbed Milan in the shoulder and cut his arm. The State would also present testimony from employees of DCFS, as well as

-2-

medical records, showing that A.P.'s mother has suffered from mental health problems, including bipolar disorder.

¶ 5      After considering the allegations of the petition and the factual basis presented by the State, the court found that A.P. was an abused minor, pursuant to count I of the juvenile petition, and a neglected minor in that his environment was injurious to his welfare, as set forth in count II of the juvenile petition. Thereafter, the court found A.P.'s mother dispositionally unfit.

¶ 6      On May 24, 2012, respondent was found to be A.P.'s legal father based on DNA testing. On June 14, 2012, respondent filed an answer to the juvenile petition, stipulating to the allegations in the petition but denying that "he contributed to the abuse or neglect."

¶ 7      On August 2, 2012, the State presented the court with a memo outlining respondent's criminal history, as well as police reports from Peoria and Minneapolis regarding the kidnapping of A.P. According to the police reports, A.P. and his half-sister, M.M., were in the custody of FamilyCore, a social service agency in Peoria. On May 10, 2012, prior to a scheduled visit, A.P.'s mother took A.P. and M.M. from a FamilyCore employee, placed them in a vehicle, and then got into the vehicle herself. The driver of the vehicle drove off, and an Amber alert was issued.

¶ 8      The FamilyCore employee told police that she had seen respondent before and believed that he was in the passenger seat of the vehicle that fled with A.P., M.M. and their mother inside. Approximately 10 hours after the abduction, officers of the Minneapolis police department found A.P.'s mother and M.M. in a garage in Minneapolis. A.P.'s mother told police that respondent forced her to abduct M.M. and A.P. and then assaulted her and left with A.P. The officers took M.M. to a shelter and learned that A.P. was at the same shelter with respondent's mother. The children were taken to a hospital and treated for pneumonia and respiratory syncytial virus (RSV). The next day, respondent turned himself in to the Minneapolis police department.

¶ 9      Respondent's criminal history showed that respondent, who was 25 years old, had been convicted of the following crimes: using a false name in 2005; obstructing legal process, arrest or firefighting in 2006; assault in 2006; terroristic threats (a felony) and a probation violation in 2007; felony assault and a probation violation in 2010; and misdemeanor assault in 2010.

¶ 10      On August 3, 2012, a combined adjudication and dispositional hearing was held for respondent. The court took judicial notice of a proffer that was made at A.P.'s mother's combined adjudication and dispositional hearing on April 26, 2012, which established that A.P. was abused and neglected based on the allegations in the juvenile petition. Respondent did not object. The court reaffirmed its finding that A.P. was abused and neglected. The court then proceeded to the dispositional phase of the hearing.

¶ 11      The State argued that respondent should be found unfit because he refused to cooperate with DCFS, participated in the abduction of M.M. and A.P., and has an extensive criminal history. Respondent asked the court to reserve a dispositional finding until the criminal kidnapping case against him had been resolved. Respondent's counsel explained that respondent had not cooperated with DCFS based on his advice as well as the advice of

respondent's criminal attorney. Respondent also argued that there was no credible evidence that he was involved in A.P.'s kidnapping. The guardian *ad litem* stated that respondent "is clearly unfit."

¶ 12 The court found respondent unfit based on his refusal to cooperate with DCFS, his alleged participation in the kidnapping of two children, including A.P., and his criminal history, which includes convictions for violent crimes. The court ordered respondent to cooperate with DCFS, complete counseling, complete a domestic violence class, obtain and maintain stable housing, attend scheduled visitation with A.P. and obtain and maintain a legal means of financial support. The court found that it was in the best interest of A.P. to be made a ward of the court with guardianship granted to DCFS.

¶ 13 ANALYSIS

¶ 14 Respondent argues that the trial court's finding that he was unfit was against the manifest weight of the evidence because the juvenile petition did not allege that he contributed to the abuse or neglect of A.P.

¶ 15 Under section 2-21(2) of the Juvenile Court Act of 1987, after a minor is adjudicated abused, neglected, or dependent, the trial court shall hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2010). At the dispositional hearing, the trial court determines whether the parents of a minor are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2010). The State must prove parental unfitness for dispositional purposes by a preponderance of the evidence. *In re April C.*, 326 Ill. App. 3d 245, 257 (2001).

¶ 16 A parent may be found unfit even if the juvenile petition contains no allegations against him. See *In re M.B.*, 332 Ill. App. 3d 996 (2002); *In re K.S.*, 203 Ill. App. 3d 586 (1990). When the court has found one parent to be the cause of the abuse or neglect of children, the court may place the children with DCFS if it finds that the second parent, living apart from the first parent, is also "unfit or *** unable *** to care for, protect, train or discipline the children or is unwilling to do so." *K.S.*, 203 Ill. App. 3d at 598-99 (quoting Ill. Rev. Stat. 1989, ch. 37, ¶ 802-27(1) (now 705 ILCS 405/2-27(1) (West 2010))). A juvenile petition places both parents on notice that their fitness will be at issue at a dispositional hearing. *M.B.*, 332 Ill. App. 3d at 1007. Thus, a parent suffers no prejudice when a juvenile petition contains no allegations against him. *Id.*

¶ 17 On review, a trial court's dispositional fitness determination will be reversed only if the trial court's finding is against the manifest weight of the evidence. *In re J.C.*, 396 Ill. App. 3d 1050, 1056 (2009). A reviewing court will not overturn a trial court's findings merely because the reviewing court would have reached a different result. *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991). A finding is against the manifest weight of the evidence where a review of the record clearly demonstrates that the trial court should have reached the opposite result. *Id.*

¶ 18 Here, the trial court's findings that A.P. was abused and neglected were based upon

allegations against A.P.'s mother and her boyfriend, Milan. Respondent was not mentioned in the juvenile petition. Nevertheless, the petition put respondent on notice that his fitness would be at issue at the combined adjudication and dispositional hearing. See *M.B.*, 332 Ill. App. 3d at 1007.

¶ 19 The evidence presented at respondent's hearing established that respondent had not participated with DCFS and had refused to complete a social history or integrated assessment. Respondent had also been charged with kidnapping A.P. and another child and was awaiting trial for that crime. In addition, respondent had a long history of criminal convictions, including several violent crimes. Based on the evidence presented in this case, the trial court's finding that respondent was dispositionally unfit was supported by the record and was not against the manifest weight of the evidence.

¶ 20                                    CONCLUSION

¶ 21 For the foregoing reasons, the judgment of the trial court of Peoria County is affirmed.

¶ 22 Affirmed.