**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190550-U
Consolidated with 2020 IL App (3d) 190551

Order filed February 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* Lm.J. and Ln.J., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Minors | ) | Will County, Illinois |
| | ) | |
| (The People of the State of Illinois, | ) | Appeal Nos.  3-19-0550 |
| | ) |          3-19-0551 |
| v. | ) | Circuit Nos.  17-JA-175 |
| | ) |          17-JA-176 |
| Petitioner-Appellee, | ) | |
| | ) | |
| Antwane J. | ) | Honorable |
| | ) | Paula A. Gomora |
| Respondent-Appellant). | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Carter and Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Trial court did not err in terminating father's parental rights when he failed to maintain a reasonable degree of interest, concern or responsibility for his children's welfare and failed to make reasonable progress toward their return home.

¶ 2    The trial court found respondent Antwane J. unfit and that it was in the best interest of his children, Lm.J. (No. 3-19-0550) and Ln.J. (No. 3-19-0551) that his parental rights be terminated. Antwane appealed. We affirm.

¶ 3                                        FACTS

¶ 4    On December 22, 2017, the State filed a petition alleging the minor children, Lm.J. and Ln.J., were neglected and in an injurious environment. The petition named respondent Antwane J. as the children's father. The allegations arose because their sister sustained significant injuries while in their mother's care, which ultimately resulted in her death. At an initial shelter care hearing on the petition at which Antwane did not appear, the children's mother stipulated that probable cause existed to establish an injurious environment. The trial court's order noted that Antwane had been declared the father of Lm.J. and Ln.J. but had not sought custody. Antwane appeared in court on January 2, 2018, and received service of summons and the petition. Antwane requested custody of the minors and was informed by the trial court that he had to file a motion for custody in family court. Antwane stipulated that probable cause existed that the minors were neglected based on an injurious environment. At the next court hearing, Antwane stipulated to the factual basis to support the State's petition. The trial court found the children neglected and continued the cause to April 19, 2018, for the dispositional hearing.

¶ 5    At the April 19, 2018, hearing, Antwane did not appear and his attorney sought to continue the case. The trial court denied the motion. The caseworker presented a service plan dated April 4, 2018, and a dispositional report dated April 5, 2018. The service plan ordered Antwane to comply with the following service tasks: attend substance abuse treatment, domestic violence for perpetrators class, individual therapy, and parenting class; obtain stable housing and employment; and attend visitation. Antwane was also ordered to submit to random drug tests. The caseworker

2

informed Antwane that he would have to submit to the random drug tests before she could refer him to other services. The trial court found Antwane dispositionally unfit based on Antwane's failure to complete his service plan by not complying with the random drug test requirement.

¶ 6 A permanency review hearing took place on July 24, 2018. Antwane was provided a copy of a second service plan, which the caseworker had previously discussed with him. According to the permanency report, Antwane had not yet undergone a substance abuse evaluation because the treatment center lacked space for him. He did not have a stable home or employment but was working at a temporary job and lived with his mom and stepfather. Antwane lost his prior job due to attending visitation. He missed multiple drug tests. He maintained inconsistent contact with the caseworker. He attended visitation but sporadically. There was concern about Antwane's behavior with his cell phone during visitation and about inappropriate material found on Antwane's cell phone. Because of Antwane's missed visitations, a rule was implemented that he had to confirm his visit 24 hours in advance. Antwane thereafter failed to confirm visitation, cancelled several visitations two hours beforehand and missed numerous visitations. When he attended visitation, Antwane would bring snacks and engage with his children but failed to set boundaries. The court found Antwane had not participated in services and failed to make reasonable progress toward reunification.

¶ 7 Antwane was not present at the January 29, 2019, permanency review hearing. The caseworker updated the court that Antwane had participated in intensive outpatient substance abuse treatment from August 2018 through December 2018, which information was not included in the permanency report. The court again found Antwane did not make reasonable progress toward Lm.J. and Ln.J.'s return home.

¶ 8        The State filed a motion to terminate Antwane's parental rights in February 2019. It sought the termination of Antwane's parental rights on three grounds: failure to maintain a reasonable degree of interest, concern or responsibility for the children's welfare (750 ILCS 50/1(D)(b) (West 2018)); failure to make reasonable efforts to correct the conditions that were the basis for the children's removal during the nine-month period from March 20 to December 31, 2018[1] (750 ILCS 50/1(D)(m)(i) (West 2018)); and failure to make reasonable progress toward the return of the children for the time period from March 20 to December 31, 2018[2] (750 ILCS 50/1(D)(m)(ii) (West 2018)). Personal service was attempted but failed due to an apparent paperwork issue and Antwane was served by publication. At a May 2019 hearing, the State told the court Antwane might be in custody in Cook County, which status was confirmed by phone call at a June 13, 2019, hearing.

¶ 9        In September 2019, Antwane appeared for the termination hearing in the custody of Cook County where he was being held on attempted murder charges. Anayelit Alcaide, the caseworker, testified. She worked for Guardian Angel Community Services and had been the caseworker for Lm.J. and Ln.J. since December 2017, when they came into care. She conducted an integrated assessment of Antwane in February or March 2018 and created a service plan. Antwane twice participated in substance abuse treatment and completed an intensive outpatient treatment program. He did not complete the aftercare requirements. Because he did not finish his substance abuse treatment, he could not engage in other required service tasks. He did not consistently participate in the required drug tests. He did not participate in individual therapy or domestic violence services. Antwane had weekly visitation but was inconsistent in exercising it. In June

[1]The State incorrectly stated the nine-month period as being from May 20 to December 31, 2018, when the time period was May 20 to December 20, 2018.
[2]The State incorrectly stated the nine-month period as being from May 20 to December 31, 2018, when the time period was May 20 to December 20, 2018.

2018, a 24-hour confirmation requirement was placed on Antwane. According to Alcaide, Antwane did not comply with his service tasks between June and December 2018. She rated his compliance unsatisfactory.

¶ 10    A second service plan dated July 2, 2018, was entered into evidence. It included the same service tasks as the original service plan. In addition, it provided that the 24-hour rule was implemented because Antwane arrived late or missed visitation despite Alcaide setting up visitation in Chicago where Antwane lived. The visits were moved back to the agency due to an unauthorized family member dropping in during Antwane's visitation. In May 2018, Alcaide banned Antwane from possessing his cell phone during visitation after she found it contained inappropriate material. One of the minors also saw the inappropriate material. Until July 2018, Antwane did not provide an address to Alcaide. From July to December 2018, Antwane provided an address but Alcaide never visited. The caseworker considered that during this time Antwane did not have stable housing or employment. He did not maintain consistent communication with her throughout the applicable nine-month period from April 20, 2018, to December 20, 2018. Until June 2018, Antwane checked in with Alcaide on his children's welfare. He visited weekly and called the caseworker monthly. He did not attend doctor or dentist visits. Alcaide could not recall if Antwane gave the children birthday cards or gifts. Although Antwane asked for assistance for an anger management class he was ordered to complete as a condition of probation in another proceeding, he was informed she would assist him once he complied with the drug testing. He told the caseworker in May 2018 he was ready for substance abuse treatment but due to "inconsistent communication" the caseworker did not complete the appropriate forms until the end of July 2018.

¶ 11    On cross-examination, Alcaide acknowledged the reason Lm.J. and Ln.J. came into the state's care was not connected to Antwane and the children had resided with their mother. Antwane

lived in Chicago and had trouble affording the costs to attend visitation in Joliet. He relied on public transportation. Alcaide moved visitation to Chicago, where they occurred at a McDonald's. During the visits, Antwane engaged his children and provided food. He seemed excited to see his children. He occasionally used his cell phone during visitation after it was banned. Visitation was moved back to Joliet because the children's maternal aunt attended visitation and was not authorized. After Alcaide told Antwane the aunt could not attend, he told the aunt to leave the next time she showed up. Antwane provided paycheck stubs. He bought Christmas gifts for Lm.J. and Ln.J. in December 2018. Antwane was in an intensive outpatient treatment program from August to December 2018. He received a certificate of completion in January 2019.

¶ 12    The State rested and Antwane moved for a directed verdict. The trial court denied the motion as to the allegations of lack of reasonable interest, concern or responsibility and reasonable progress but granted it as to lack of reasonable efforts. The trial court found Antwane was unfit in that he failed to maintain a reasonable degree of interest, concern or responsibility as to his children's welfare and that his failure to complete substance abuse treatment prohibited him from completing any other services. The court further found that Antwane failed to make reasonable progress toward the return of Lm.J. and Ln.J. to his care within nine months after the adjudication of neglect, with the nine-month period being March 20, 2018, to December 20, 2018.

¶ 13    A best interest hearing ensued. Alcaide testified again. Lm.J. and Ln.J. lived with their sister and foster parents in a single-family home that had been divided into two apartments. The home had three bedrooms and the children shared a room with their sister. The room was large enough for three children and each child had her own bed. The foster home was adequately furnished, safe and appropriate. The foster parents met all the children's needs. The foster parents were both employed full time and earned income sufficient to support the children. The children

6

were in appropriate day care and doing well there and in preschool. The foster mother stayed in communication with the children's mother. Alcaide did not know if the foster parents would maintain a relationship with Antwane. The children had bonded with the foster parents, calling them "mommy" and "daddy." The foster parents wanted to adopt Lm.J. and Ln.J. In Alcaide's opinion, it was in the children's best interests that Antwane's parental rights be terminated. The trial court agreed and terminated Antwane's parental rights. He appealed.

¶ 14                                     ANALYSIS

¶ 15        Antwane raises three issues on appeal: whether his due process rights were violated, whether the trial court erred in finding him unfit and whether the trial court erred in finding it was in Lm.J. and Ln.J.'s best interest that his parental rights be terminated.

¶ 16        The first issue we consider is Antwane's assertion that the trial court violated his due process rights through cumulative error. Specifically, Antwane argues that because of his absence at the April 2018, dispositional hearing, where the trial court denied the motion for a continuance by Antwane's attorney, he was not advised of his right to appeal the dispositional order. According to Antwane, the error constituted a due process violation which tainted the rest of the proceedings. The State argues this court lacks jurisdiction to consider the issue. The State is correct.

¶ 17        The timely filing of a notice of appeal is the first step in the jurisdictional process for appellate review. *In re D.D.*, 337 Ill. App. 3d 998, 1008-09 (2002). If there is no properly filed notice of appeal, the reviewing court lacks jurisdiction to consider the issue. *People v. Price*, 404 Ill. App. 3d 324, 329 (2010). A final order in a juvenile proceeding must be appealed within 30 days of its entry or the disposition of a motion attacking the order. Ill. S. Ct. R. 606(b) (eff. July 1, 2017). A final order sets the time frame or fixes the party's rights. *In re A.H.*, 207 Ill. 2d 590, 594 (2003) (citing *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002)). A dispositional order in a juvenile

7

proceeding is a final and appealable order. *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000). We review a claim of due process violation *de novo*. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 44.

¶ 18   The trial court denied Antwane's motion for a continuance at a hearing on April 19, 2018, and found him dispositionally unfit. He did not file a notice of appeal until his parental rights were terminated after the September 16, 2019, best interest hearing. He did not timely appeal the April 2018 dispositional order, which he now argues constituted a due process violation. Accordingly, we lack jurisdiction to consider Antwane's due process argument.

¶ 19   We next consider whether the court erred in finding Antwane unfit. He argues the court improperly reasoned he did not show a reasonable degree of interest, concern or responsibility for the welfare of his children. He also challenges the trial court's finding that he failed to make reasonable progress toward the return home of his children in the nine-month period from March 20, 2018 to December 20, 2018.

¶ 20   The termination of parental rights involves a two-step process. *In re C.W.* 199 Ill. 2d 198, 210 (2002). The first step involves a determination of the parent's fitness and the second step concerns whether termination is in the best interest of the child. *Id.* A parent is unfit where he fails to "maintain a reasonable degree of interest, concern or responsibility as to the child's welfare" or to make reasonable progress to correct the conditions that caused the removal of his child during any nine-month period following a neglect or abuse adjudication. 750 ILCS 50/1(D)(b), (m)(ii) (West 2018). Where the State alleges multiple grounds of fitness, a single proven ground is sufficient to terminate parental rights. *In re D.D.*, 196 Ill. 2d 405, 422 (2001). A trial court's finding of unfitness will not be reversed unless it was against the manifest weight of the evidence. *In re J.P.*, 261 Ill. App. 3d 165, 174 (1994).

¶ 21    To determine whether a parent has shown a reasonable degree of interest, concern or responsibility for his child's welfare, a court looks at the parent's conduct in light of the circumstances in which it occurred. *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990). Factors impacting the analysis includes whether a parent's failure to visit his child was due to difficulty in obtaining transportation to visit, lack of financial resources, any hinderance to or discouragement of visitation by the actions and statements of others, and whether the parent's failure to visit was due to a need to handle other aspects of his life or was motivated by "true indifference to, and lack of concern for, the child." *Id.* at 279. Where personal visits are not feasible, the parent may express interest, concern and responsibility through phone calls, letters, cards or gifts, depending on the context, tone and frequency of the contacts in light of the parent's circumstances. *Id.* What is important are the parent's efforts to communicate and show interest in his child and not the success of his efforts. *Id.* A parent who is fit would work to complete the required service tasks to show his interest, concern and responsibility for his children. *In re C.L.T.*, 302 Ill. App. 3d 770, 776 (1999).

¶ 22    In considering whether a parent failed to make reasonable progress toward reunification, the court considers the parent's compliance with his service plan requirements and the directives of the court in light of the condition giving rise to the child's removal and other conditions of which the court later discovers and would prevent the child's return home. *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17. Reasonable progress exists when the court is able to conclude that the parent's progress in complying with the service tasks and court directives are "sufficiently demonstrable and of such a quality" that the court would be able to order the child be returned home in the near future. *Id.* A parent fails to make reasonable progress when he does not substantially fulfill his service tasks and correct the conditions that resulted in the child's removal. *In re C.N.*, 196 Ill. 2d

181, 217 (2001). The court examines reasonable progress using an objective standard which is based on the amount of progress measured from the conditions that resulted in the removal of the child. *D.T.*, 2017 Ill. App. (3d) 170120, ¶ 17. A parent may be found unfit although the juvenile petition does not include any allegations against him. *In re A.P.*, 2013 IL App (3d) 120672, ¶ 16. The petition informs the parent that his fitness will also be at issue. *Id.* The child will remain in the custody of the State where the court finds the second parent, who lives apart from the first, also unfit to care for the child. *Id.*

¶ 23    Antwane asserts that the court improperly employed the same analysis to find him unfit for failing to maintain a reasonable degree of interest, concern or responsibility and for failing to make reasonable progress toward reunification. He maintains this analysis improperly conflates the two grounds of unfitness. He is correct that the trial court considered his failure to complete the aftercare portion of his substance abuse treatment as an indication that he was unfit as to both allegations of unfitness. However, the trial court's reasoning was not improper. The court noted that the completion of substance abuse treatment was the first hurdle Antwane needed to clear in order to move on to other ordered service tasks and that he was unable to get past it. According to the trial court, Antwane's failure to complete the services necessary to remove his children from foster care amounted to a failure of his responsibility as a parent to his children. The court concluded that because Antwane did not finish substance abuse treatment and could not proceed to engage in other required services, his conduct showed a lack of responsibility in that it prevented him from having his children in his care and custody.

¶ 24    Other examples of Antwane's conduct support the trial court's findings. Although Antwane did participate in visitation, providing appropriate food and engaging with his children, he was inconsistent in his attendance and in satisfying the notification requirement. He missed multiple

opportunities to spend time with his children. There were concerns about his behavior during visitation, including the discovery of inappropriate material on his cell phone. There were periods of time when Antwane did not stay in communication with the caseworker and was not available via his cell phone. We find the trial court did not err when it found that Antwane failed to maintain a reasonable degree of interest, care and responsibility for the welfare of his children.

¶ 25　　　　The facts also establish that he failed to make reasonable progress toward reunification. As Antwane argues, the court considered his inability to complete substance abuse treatment as indicative of his failure to make reasonable progress. His ability to engage in other service tasks, including individual therapy, parenting class and domestic violence counseling, was dependent on him satisfying the drug test requirement. Antwane first had to comply with the drug test requirement before he could participate in the domestic violence or parenting classes he was required to complete. He did not satisfy the drug test requirement. According to the caseworker, he missed 15 out of 16 tests ordered between June and December 2018. There was no information regarding the results of the one test Antwane did take. Although he eventually participated in substance abuse treatment, he did not participate in aftercare and remained noncompliant with the drug test requirements and other service tasks. Antwane also did not succeed on the service tasks that were not contingent on the drug tests. He did not maintain stable employment or housing. He was inconsistent in attending visitation.

¶ 26　　　　We reject his claim that he was not the reason Lm.J. and Ln.J. were brought into shelter care and that his failure to comply with the service tasks was an insufficient basis to find him unfit. It is undisputed that the children were solely in their mother's care when the neglect took place and that Antwane did not live with her or the children. Nevertheless, the court properly found Antwane unfit even though the juvenile petition did not name him. He was the children's parent

11

and had an obligation to protect them, as well as see to their well-being. The court considered that Antwane could not offer safe and secure custody for Lm.J. and Ln.J. and required him to perform service tasks so he could be prepared to parent his children. He did not comply with the court's orders. Accordingly, we find the court did not err in finding Antwane unfit.

¶ 27    The final issue is whether the court erred in finding it was in the best interest of Lm.J. and Ln.J. that Antwane's parental rights be terminated. He argues that because the trial court erred in finding him unfit, the court's finding that it was in the best interest of Lm.J. and Ln.J. that his parental rights be terminated cannot stand.

¶ 28    After the court determines a parent is unfit, the court next looks at whether it is in the best interest of the child that parental rights be terminated. *In re Gwynne P.*, 346 Ill. App. 3d 584, 599 (2004). The court looks at the following factors to make a determination of whether the child's best interest supports termination: the child's physical safety and welfare; the development of his identity; the child's familial, cultural and religious background; his sense of attachment, including love, security, familiarity, continuity of affection and the least disruptive placement alternative; the wishes of the child and his long-term goals; his community ties; the child's need for permanence, including stability, continuity of relationships with parental figures and relatives; the uniqueness of the child and his family; the risks of substitute care; the preference of the person available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018). A trial court's determination regarding best interest will not be reversed unless it was against the manifest weight of the evidence. *Gwynne P.*, 346 Ill. App. 3d at 599.

¶ 29    The caseworker was the only witness at the best interest hearing. She testified that the children had been together in the same traditional foster care home, along with another sister, since their removal in December 2017. The three children share a bedroom which is large enough with

12

each child having her own bed. There are no concerns about the children's safety and welfare; the foster home is a safe and stable environment. The children have formed "positive, loving and nurturing bond[s]" with their foster parents. They seek out the foster parents for comfort and call them "mommy" and "daddy." The foster parents were willing and wanted to adopt the children. We agree with the trial court that the termination of Antwane's parental rights are in his children's best interest and find it did not err when it terminated Antwane's rights.

¶ 30                                           CONCLUSION

¶ 31          For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 32          Affirmed.