NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241472-U

NO. 4-24-1472

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 23JA203 |
| v. | ) | |
| Samantha R., | ) | Honorable |
| Respondent-Appellant). | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the trial court's determination that
respondent was unfit at the dispositional hearing was not against the manifest
weight of the evidence.

¶ 2    Respondent, Samantha R., appeals the trial court's dispositional order finding her

unfit as to her minor child, M.H. (born 2015). On appeal, she argues the court's dispositional

unfitness finding was against the manifest weight of the evidence, and, rather than being found

unfit, she should instead have been found unable.

¶ 3    We affirm.

¶ 4                              I. BACKGROUND

¶ 5    On November 8, 2023, the Illinois Department of Children and Family Services

(DCFS) filed a petition for adjudication of wardship of M.H., alleging he was neglected pursuant

to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West

2022)) in that his environment was injurious to his welfare. The petition alleged that on or about June 29, 2023, DCFS received a hotline call regarding injuries observed on M.H., including a bruise on the side of his face, a bite mark on his right shoulder, and a mark on his lower back. The same day, a DCFS investigator spoke to M.H. at the home of his father, Ryan H. M.H. told the investigator that when he was not living with his father, he lived with respondent, her boyfriend, Joel C., and his four siblings. M.H. stated that a few days before, he attempted to run away from respondent's home after respondent became angry with him when she believed he gave her the middle finger. He stated that respondent grabbed him, slapped his face multiple times, and forced his right arm into his mouth, making it hard for him to breathe. This incident was observed by multiple siblings. A recording of the incident taken by one of the children showed respondent's arm around M.H.'s neck while M.H.'s feet appeared to be off the ground. M.H. stated that respondent and Joel often became upset with the children and would yell, curse, spank them, "pop them in the mouth," and slap them. M.H. stated that he felt safe living with his father but not respondent. Interviews with M.H.'s siblings and other family members confirmed that respondent and Joel were frequently physical with both the children and each other and that there was ongoing drug use in the home.

¶ 6        The petition further alleged that on or about September 5, 2023, DCFS was notified that Ryan H. had died suddenly as the result of a drug overdose. M.H. was present at the time his deceased father was found. M.H. began living with his paternal grandmother, Susan H.

¶ 7        The petition concluded that, based on the allegations of violence concerning respondent, it was in the best interest of M.H. and the public that he be adjudicated a ward of the court.

¶ 8        On January 24, 2024, the trial court entered an order of no contact against

respondent as to M.H. The order granted supervised parenting time between respondent and M.H. at the discretion of DCFS but otherwise prohibited communication between the two.

¶ 9　　　　　On October 16, 2024, the trial court held an adjudicatory hearing on the petition. The State moved to enter the narrative portion of the petition and informed the court it had witnesses who would testify consistently with the information therein. No other party presented evidence or argument. Based on the State's petition and proffer, the court found the State had proven by clear and convincing evidence that M.H. was neglected.

¶ 10　　　　　The trial court then moved immediately to a dispositional hearing. It considered a report prepared by a caseworker on M.H.'s case. The report stated that respondent had either completed or was in the process of completing all of her recommended services, including parenting classes, a substance abuse assessment, anger management classes, and counseling. No further instances of physical abuse had been reported.

¶ 11　　　　　The report also stated that Susan H. had been cooperative with DCFS and had not been recommended for any services. The report found her home was appropriate, M.H.'s needs were being met, and M.H. felt safe residing with her. It found no concerns with M.H. remaining in her care.

¶ 12　　　　　According to the report, M.H. expressed that he enjoyed visits with his brother, A.H., but did not wish to continue visits with respondent. On April 15, 2024, visits between M.H. and respondent were suspended following a meeting between DCFS staff, M.H.'s doctors, and all attorneys involved in the case. On August 8, 2024, M.H.'s therapist recommended that visits with respondent remain suspended due to M.H.'s "current mental status which includes anxiety, anger, and distrust of" his mother. She confirmed on September 24, 2024, that he remained "very angry" with respondent.

¶ 13 At the dispositional hearing, the caseworker confirmed on questioning from respondent's counsel that respondent had completed or was in the process of completing all services recommended up to that point and, to her belief, met minimal parenting standards. Counsel asked if M.H. appeared to be happy at the visits he had with respondent. The caseworker confirmed that he did. On later questioning from the guardian *ad litem*, however, the caseworker acknowledged that M.H. told her he acted happy at visits with respondent in order to continue seeing his brother, A.H., but did not actually wish to have visits with his mother.

¶ 14 Counsel for Ben G., A.H.'s biological father, asked the caseworker if respondent had completed any domestic violence services. The caseworker confirmed she had not. Counsel then asked if those services should have been recommended based on the allegations of physical violence made against respondent. The caseworker confirmed that they should have but explained that service recommendations for each case were generated by a computer program and the program did not recommend domestic violence services for respondent.

¶ 15 At the conclusion of questioning, the trial court asked for recommendations. The State recommended that M.H. remain placed with Susan and that respondent be found unable to care for him. The State further recommended that, based on Susan's fitness, M.H.'s case be closed. Counsel for respondent recommended that respondent be found fit but unable and asked that the case remain open, with a goal of returning M.H. home to respondent.

¶ 16 The trial court found respondent unfit as to M.H. and ordered that custody of the minor remain with Susan, whom it found to be fit. The court additionally ordered respondent to cooperate with DCFS, engage in counseling, complete a drug assessment and follow its recommendations, and complete domestic violence services. A dispositional order entered the same day made M.H. a ward of the court, continued his placement with Susan, and kept visits

suspended between him and respondent.

¶ 17       This appeal followed.

¶ 18                               II. ANALYSIS

¶ 19       We initially note that at the same time respondent appealed the trial court's dispositional findings as they relate to M.H.'s case, she also appealed the court's findings in a separate case concerning another one of her children, A.H. On appeal, counsel for respondent submitted the same brief in each case. This brief focuses largely on A.H.'s situation and makes only a passing reference to M.H.'s case. Nevertheless, from the brief, we can discern the argument related to M.H. that the court's finding of respondent's unfitness was against the manifest weight of the evidence and the assertion that she should instead have been deemed unable to care for M.H.

¶ 20       We note our confusion regarding this argument. At a dispositional hearing, at which a trial court is tasked with determining whether a minor should be made a ward of the court, a finding of parental unfitness is only necessary if the court seeks to place the minor with a third party and not a parent. See 705 ILCS 405/2-27(1) (West 2022). It is not necessary in order to make a minor a ward of the court. *Id.* § 2-22(1). However, despite respondent appealing the trial court's unfitness determination, she does not appear to contest M.H.'s placement with his grandmother or argue that M.H. should have been placed with her instead. Moreover, whether respondent was found "unfit," as the court determined, or "unable," as she now argues on appeal, is largely irrelevant. Either determination would have justified the placement of M.H. with a third party. See *id.* § 2-27(1) (stating a court may place a minor with a third party where the minor's parents are "unfit *or* are unable" to care for them) (emphasis added)). Nevertheless, as respondent has raised the issue of the court's fitness determination, we will address it.

¶ 21　　　　Under section 2-22 of the Act, once a minor has been adjudicated neglected and made a ward of the court, the trial court must "determine the proper disposition best serving the health, safety and interests of the minor and the public." *Id.* § 2-22. The Act provides four dispositions from which a court may choose. *Id.* § 2-23. It may (1) continue the custody of the minor with his parents, guardian, or legal custodian; (2) place the minor in accordance with section 2-27 of the Act (*id.* § 2-27); (3) restore custody to the parents, guardian, or legal custodian, or (4) order the minor partially or completely emancipated. *Id.* § 2-23. Section 2-27 of the Act allows a court to place a minor with a suitable relative if it finds the minor's parents are

> "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." *Id.* § 2-27.

A trial court's finding of dispositional unfitness will be reversed only if it is against the manifest weight of the evidence or if the record clearly demonstrates that the opposite result was proper. *In re A.T.*, 2015 IL App (3d)140372, ¶ 13.

¶ 22　　　　Here, we do not find the trial court's determination that respondent was unfit was against the manifest weight of the evidence. Although respondent completed, or was in the process of completing, all services recommended as part of her case plan, she had yet to complete domestic violence services. As M.H. was removed from her care due to physical violence he experienced at the hands of respondent, we cannot say this determination was against the manifest weight of the evidence. See *In re M.B.*, 332 Ill. App. 3d 996, 1005 (2002) (holding the trial court's unfitness finding was not against the manifest weight of the evidence where the respondent mother had completed some services but had not completed services aimed at

rectifying the issues leading to her daughter's removal from her care).

¶ 23                                            III. CONCLUSION

¶ 24            For the reasons stated, we affirm the trial court's judgment.

¶ 25            Affirmed.