NOTICE
Decision filed 08/01/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230148-U

NOS. 5-23-0148, 5-23-0149 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* K.G. and R.G., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 22-JA-48, 22-JA-49 |
| v. | ) | |
| | ) | |
| Roy G., | ) | Honorable |
| | ) | Elaine L. LeChien, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court erred in finding the respondent father to be an unfit parent during the dispositional stage where the only evidence of unfitness presented was a 10-year-old prior custody order awarding full custody of the children to mother because of father's pornography/sex addiction.

¶ 2   The respondent, Roy G., appeals the dispositional order filed on February 15, 2023, finding him to be an unfit parent, awarding the Illinois Department of Children and Family Services (DCFS) custody of his children, K.G. and R.G., and the subsequent order denying his motion for reconsideration filed on March 3, 2023, by the circuit court of St. Clair County. Roy raises two central issues on appeal, (1) that the circuit court erred by giving weight to an alleged previous behavior rather than carefully considering the standards of fitness as weighed against a parent's

1

current fitness, and (2) that the circuit court made clearly erroneous findings of fact that contradicted the circuit court's own standing orders. Essentially, Roy alleges that the circuit court gave improper weight to a previous court's ruling, "Georgia Order," that had been entered against him in a Georgia court more than 10 years previous and allegations by the mother of the children and ex-wife of Roy of pornography and sex addiction. For the following reasons, we reverse the circuit court's February 15, 2023, order finding Roy unfit as a parent.

¶ 3                                    I. BACKGROUND

¶ 4     The facts necessary to our disposition of this appeal follow. On March 8, 2022, the State filed, in the circuit court of St. Clair County, two petitions for adjudication of wardship as to the minor children, K.G. and R.G.[1] The State's petition alleged that the minors had been neglected in that the respondent mother, Lindsay A., (who is not a party to this appeal) exposed the minors "to an environment which is injurious to the health and welfare of [the minors]" and left the minors without "adequate supervision for an unreasonable period of time without regard for the mental or physical health, safety, or welfare of [those minors]." Specifically, the petition made allegations of the minors being exposed to domestic violence between Lindsay A. and the father of her other two minor children, Christopher A., as well as the minors being left home for a weekend while mother travelled to another city with a paramour. There were no allegations within the petition which alleged any neglect or abuse suffered by the minors at the hands of Roy. Roy was only identified in the initial petition as the legal father of K.G. and R.G.

---

[1]At the trial court level (22-JA-48 and 22-JA-49) and here on appeal (5-23-0148 and 5-23-0149), there were two separately filed cases at issue. The cases on appeal have been consolidated so that this court may jointly dispose of the matters since the same ultimate issue exists in both cases. The facts relevant to the analysis of both cases and the filings at the trial court level are essentially identical.

¶ 5    On March 13, 2022, the minors were taken into protective custody after Lindsay was hospitalized for an intentional prescription drug overdose. Amended petitions for adjudication of wardship were filed on March 15, 2022, adding this allegation as a basis for the minors' neglect and the circuit court held a shelter care hearing that same day. The circuit court stated, "With regard to the [minors], father has not had contact with the minors for several years. He's living in Texas at this time. There was a court order in Georgia and that's being taken up down the hall." It then held, "There is an immediate and urgent necessity to remove the minors from the home and leaving the minors in the home is contrary to the health, welfare and safety of the minors based on those facts that I stated earlier [(referencing the allegations of the State)]." Temporary custody of the minors was then ordered to DCFS. The circuit court then ordered supervised visits for "mother and fathers." It then ended its pronouncement with an instruction that "[m]other and fathers shall cooperate fully with services, an integrated assessment, domestic violence assessments and mental health assessments."

¶ 6    Prior to these juvenile court proceedings, on January 27, 2022, Roy filed an emergency order of protection on behalf of the minors in the circuit court of St. Clair County. He also filed a petition to enroll judgment of another state, the Georgia order, and a motion to modify parental responsibilities, both filed on February 28, 2022. The emergency request was denied by the circuit court, subsequently leaving the minors with Lindsay who then overdosed while the minors were in her care. On June 6, 2022, Roy filed a petition for additional parenting time or other relief wherein he requested additional parenting time as he was having to fly from Texas to participate in the supervised visits ordered by the circuit court and it was limiting his ability to fully "enhance his relationship with his minor children." This petition was not ruled upon prior to the entry of the order being appealed.

3

¶ 7    On June 21, 2022, the petition to enroll judgment was granted and the Georgia order was enrolled in case No. 22-DC-70. Roy then moved to consolidate all the proceedings, which was subsequently granted by the circuit court on July 18, 2022.

¶ 8    At the dispositional hearing on December 14, 2022, the circuit court heard testimony from Antonio Hampton, a public service administrator for DCFS, who testified that Roy's service plan was to bond with his children, visit and communicate with them as often as he could, and cooperate with DCFS. At that time, Hampton stated that he considered Roy a "viable parent" with whom to place the minors, and it was his recommendation that respondent have custody and guardianship of them.

¶ 9    Hampton testified that Roy had a stable job as an engineer with NASA security clearance and lived in Texas with his wife and daughter. He further testified that DCFS had run background checks on Roy as part of standard practice and "nothing came back." As a result, Roy had not been required by DCFS to undergo evaluations or complete any parenting classes. Hampton testified that Roy had steady consistent visits with the minor children since March 2022, but that he had not had unsupervised or overnight visits. Additionally, the DCFS reports indicated that the interactions between Roy and the minors were "appropriate and positive," and that Roy and the minors were affectionate including sharing hugs and gifts.

¶ 10    Lindsay also testified during the dispositional hearing. She testified that she and Roy were divorced in 2012 via Florida court decree and that a final order regarding custody was entered by a Georgia court in 2014. She testified that, following the divorce, Roy was not involved in the children's lives. She claimed Roy did not call, have parenting time, send gifts, and only paid child support for approximately a year following the entry of the Georgia order. She also testified that she never once spoke directly with Roy following the divorce.

¶ 11   Lindsay then testified regarding her various treatments, assessments, and counseling. *Inter alia*, she discussed her mental health treatment and that she had been prescribed certain medications. She testified that she fell and was treated for "post-concussion syndrome" and that the myriad of medications she was on resulted in "serotonin syndrome." She testified that as a result of those conditions that she had "been having issues with my memory, too." The DCFS reports also indicated that she had been diagnosed with schizophrenia sometime in 2018.

¶ 12   The circuit court inquired of Lindsay regarding Roy, specifically, whether she believed he was "a fit parent." She responded, "I don't know if he is" because "I don't know where he is today ***. Because all I know is from him many years ago." She went on to say, "There's a lot of bad things I know about him. He used to watch teen pornography." We note for clarity that there are no allegations of Roy ever having in his possession or watching child pornography. This testimony was objected to based upon Lindsay's own testimony that she had no knowledge of his fitness as a parent at that present time. However, the circuit court overruled the objection and allowed the testimony regarding the contents of the Georgia order to "flush out the background of what the custody arrangement was."

¶ 13   It was then testified to that in the Georgia order the circuit court denied Roy any visitation or custody rights as to the minor children because it determined Roy had a sex addiction. Roy was also ordered to undergo treatment for his sex addiction and was denied visitation to his children until "further order of the court." Lindsay then testified that she believed DCFS was not considering those concerns and that her caseworker was not communicating effectively with her.

¶ 14   Michael Tyler, Lindsay's father, also testified. He testified regarding the Georgia order. The order was entered as an exhibit without objection. Tyler testified that Roy entered into a previous court-ordered sexual addiction program prior to the Georgia order's entry but did not

complete the program, leaving against the caretakers' advice. Tyler testified that Roy called him and told him he left the program early, that he missed his children, and that he was fine. Tyler urged him to return to the program. He then stated that he believed Roy still had a problem with sex addiction following his early exit from the program because at later court hearings Roy confessed to the problem and it was discovered that Roy had joined a website advertising "that he would do porn videos and that he was available for sex." Tyler then testified that he had not had any contact with Roy since 2014. Finally, he testified that there were never any allegations of molestation or misbehavior between Roy and his children.

¶ 15    The Georgia order from 2014 stated that Roy admitted he struggled from sexual addiction during a March 20, 2014, hearing. He further admitted that he placed his image on a website for the purpose of participating in pornographic films and engaging in other sexual activity. Roy spent 153 days in a sexual addition program from June 2012 through November 2012, but did not complete the program. The order also indicated that Roy admitted he accessed the website containing his pornographic advertisement nine days following his early exit from treatment.

¶ 16    Within the Georgia order, which was admitted as evidence, the Georgia court found that Roy exhibited a lack of concern for the minors because he did not maintain and continue a meaningful familial bond. During a six-month period, despite having 13 opportunities to visit his children, Roy admitted he had only visited them 5 times. Further, the court found that Roy failed to finish his treatment. It ruled that contact between Roy and the children "would be contrary to their best interests and could cause serious physical, mental, emotional, or moral harm to the children." The court found it in the children's best interests to terminate all visitation and contact with Roy until he could exhibit and prove he had dealt properly with his addictions. Sole permanent

and physical custody was awarded to Lindsay, with Roy ordered to have no visitation or contact with the minors until the final order was modified by a court.

¶ 17    Roy testified at the January 18, 2023, dispositional hearing. He introduced records regarding sexual addiction counseling and therapy he attended from 2012 to 2015. Some reports acknowledged general progress or completion of the program, but others noted that addiction recovery was an ongoing process, and future behavior could not be predicted. Roy completed three of the four programs in which he participated. Roy also met with psychiatrist Stephen Cotton at Atlantic Psychiatric Center to discuss emotional and psychological issues and trauma in his life prior to the Georgia final order. Cotton's assessment letter indicated that Roy had described uncontrolled sexual impulses which suggested a sexual addiction and impulse control disorder, but Cotton ultimately opined following their final visit on February 12, 2014, that Roy's impulse control disorder was currently in remission and that Roy did not represent a risk to his children at that time.

¶ 18    During the hearing, Roy initially denied having problems with sex addiction or pornography, claiming he was manipulated into thinking he had an issue by Lindsay and her mother. However, on cross-examination, he admitted to having issues in the past, but denied their current relevance to his parenting capabilities. Specifically, he stated he knew "for a fact that my pornography or viewing of pornography is not an issue." He admitted that he had not pursued any treatment follow-up after 2014, despite a court order requiring him to do so. Roy further admitted at the dispositional hearing to marketing himself on the adult website, which he claimed was just for pornography or adult films, to become involved in adult films because he enjoyed them.

¶ 19    Antonio Hampton testified again at the January 18, 2023, disposition hearing. He testified that DCFS had learned about the allegations against Roy early in the case and contacted the DCFS

7

equivalent in Texas. He believed they also contacted Florida, Alabama, and quite a few places, as well. They also did an out-of-state LEADS and nothing came back that caused them to be concerned. He clarified that DCFS had not required or recommended that Roy do classes, undergo any assessments, or participate in counseling.

¶ 20 Following the dispositional hearings, conducted on December 14, 2022, and January 11 and 18, 2023, the circuit court entered a written dispositional order on February 15, 2023, finding the minors neglected or abused due to Lindsay's acts or omissions. The circuit court then found both Lindsay and Roy unfit and unable currently to care for, protect, train, educate, supervise, or discipline the minors and further found placement with either parent was contrary to the minors' health, safety, and best interest. As to Roy, the court also found as additional grounds that Roy had not had contact with the minors for several years prior to the instant proceedings, the treatment he received for his addictions predated a Georgia court order requiring treatment, and his concerning behaviors had not been assessed due to lack of a DCFS service plan. The court ordered custody and guardianship placed with DCFS and ordered DCFS to develop and implement a new service plan in conformity with its order for Roy. Custody of the minors was not to be returned to the parents without further order of the court. Roy subsequently brought this appeal from this order and the denial of his motion to reconsider.

¶ 21 Additional facts relevant to our analysis are included where appropriate below.

¶ 22                                      II. ANALYSIS

¶ 23 First, we note that the State in its brief requested this court to strike Roy's brief for failure to follow Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). However, forfeiture is a limitation on the parties and not the court. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 43. Thus, we decline to do so and will overlook the alleged deficiencies of Roy's brief in light of his *pro se* status and

considering the fundamental liberty interest of a parent to raise and care for their child is at stake. *In re Z.L.*, 2021 IL 126931, ¶ 88.

¶ 24 The respondent comes before this court challenging the propriety of the circuit court's dispositional finding that the respondent is an unfit parent and ordering the minors be kept in the custody of DCFS. The relevant case law controlling this matter is well outlined in *In re M.B.*, 332 Ill. App. 3d 996, 1002-04 (2002):

"Pursuant to section 2-13 of the [Juvenile Court Act of 1987 (Act)], the State may file a petition on behalf of any minor child who is alleged to be neglected, abused or dependent. [Citation.] The petition must allege, with sufficient factual detail, the abuse, neglect and/or dependency of the minor and, in cases where the State seeks an adjudication of wardship, as the State did in this case, the petition shall assert that the interests of the minor and public would best be served by having the minor adjudged a ward of the court. [Citation.] The petition, notably, need not specify any proposed disposition of the matter upon an adjudication of wardship. [Citation.]

Following the filing of such a petition, the circuit court must hold an adjudicatory hearing solely to determine whether the State's allegations of neglect, abuse and/or dependency are supported by relevant evidence. [Citations.] If, after consideration of the evidence, the court finds the minor abused, neglected and/or dependent [citation], the court must schedule a dispositional hearing to be conducted in accordance with section 2-22 of the Act to determine whether a declaration of wardship is appropriate. [Citation.] 'At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public' that the minor be made a ward of the court. [Citation.] If such a

9

determination is made, the court must then determine the proper disposition of the matter in light of the health, safety and best interests of the minor and the community. [Citation.]

Section 2-23 of the Act authorizes the circuit court to enter dispositional orders for the custody or placement of abused and neglected minors. [Citation.] Of the particular kinds of dispositional orders authorized, a minor found abused, neglected or dependent may be kept in the custody of her parents. [Citation.] ***

As an alternative to ordering the minor kept in parental custody, the court may place the minor in accordance with section 2-27 of the Act. Section 2-27 provides in relevant part:

'If the court determines and puts in writing the factual basis supporting the determination of whether the parents *** of a minor adjudged to be a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents *** the court may at this hearing and at any later point:

* * *

(d) commit the minor to the Department of Children and Family Services for care and service[.]' [Citation.]

* * *

*** In gauging one's fitness to act as a parent, the child's best interests are not to be considered. Rather, the focus must be on the parent in question. [Citation.] Because a determination of unfitness pursuant to section 2-27 does not result in a termination of

parental rights, the standard of proof is the less rigorous preponderance of the evidence, and the court's determination of unfitness under that section will be disturbed on review only when found to be against the manifest weight of the evidence. [Citation.] A decision is against the manifest weight of the evidence only where a review of the record clearly demonstrates that the opposite conclusion is proper. [Citation.]"

¶ 25    While Roy makes numerous specific arguments on appeal, his primary contention is that the circuit court erred in finding him unfit pursuant section 2-27 of the Act. 705 ILCS 405/2-27 (West 2022).

¶ 26    In this case, the circuit court found three grounds to support its finding of parental unfitness for Roy:

"1. Father had not had contact, per prior Georgia court order, with the minor children for several years prior to these proceedings.

2. The Georgia Court order terminated all visitation and contact between Father and the minors 'until such time as he can exhibit and prove that he has taken the proper action to deal with his addictions.' All treatment that Father testified to at trial was completed prior to the Georgia court's ruling and was considered by that Court at the time the order was entered.

3. DCFS did not give Father a service plan and thus he has not been assessed for any of the concerning behaviors."

¶ 27    We first look to the first ground, that Roy "had not had contact, per prior Georgia court order, with the minor children for several years prior to these proceedings." This finding is factually incorrect and is directly contrary to the circuit court's own temporary order entered on March 15, 2022, which awarded Roy supervised visitation with the minor children. Thus, Roy *did*

11

*have contact* with his minor children for nearly a year prior to the circuit court's entry of this finding. Both Roy and DCFS testified that these visits occurred regularly, both in-person and via Zoom. Further, Roy's current wife and another daughter who resides with him also visited with the minor children. All testimony from DCFS indicated that these visits were "appropriate and positive," and that affection was demonstrated between the parties during the visit. There was no testimony of any concerns regarding these visits. In fact, Hampton testified that Roy had "developed a close, personal bond with the children at this point in time." He also testified that both children indicated they wanted to live with Roy on more than one occasion. The children being 14 and 12 at that time were not so young that a court should completely discount their stated desires.

¶ 28    Second, the circuit court found that the Georgia order terminated visitation and all contact between Roy and the minors "until such time as he can exhibit and prove that he has taken the proper action to deal with his addictions." The circuit court then notes that "[a]ll treatment that [Roy] testified to at trial was completed prior to the Georgia court's ruling and was considered by that Court at the time the order was entered." Here, the circuit court seems to imply through this finding that somehow this order is binding for the purpose of finding Roy unfit. This is incorrect.

¶ 29    As previously stated, the circuit court, itself, already modified this order when it gave Roy supervised visitations in March 2022. Further, Roy had filed a motion to modify the Georgia order and filed a petition seeking additional parenting following the entry of the March 15, 2022, temporary order. Thus, the Georgia order, while likely admissible, must be viewed in light of all the other evidence from the dispositional hearing.

¶ 30    The only evidence that the Georgia order provides is that approximately 10 years prior to the dispositional hearing, Roy had admitted to having a sex addiction which involved infidelity in

12

the marriage, him watching pornography, and marketing himself online for hire to do adult films. At no point did anyone testify to how these previous issues impacted his ability to parent the minor children. Lindsay and her parents testified they had not spoken to Roy since the entry of the Georgia order in 2014. Thus, they could offer no testimony on Roy's current condition or parental fitness. Roy testified that he had a stable job as an engineer where he had security clearance working with NASA. He had been with his current wife since shortly following his divorce from Lindsay and they had a young daughter who resided with him. Roy testified that he had overcome his issues with sex addiction, and while he still watched pornography, it was in no way something that would impact his ability to parent his children. Roy offered testimony that he participated in four different treatments from 2012-2014 for his issues and completed three of those four. He also testified to and provided an assessment letter from a licensed psychiatrist, Stephen Cotton, who opined that following their final visit on February 12, 2014, Roy's impulse control disorder was currently in remission and that Roy did not represent a risk to his children at that time. Hampton with DCFS testified that they conducted various out-of-state searches looking for issues regarding Roy and none were discovered. The equivalent of DCFS in Texas reported no issues with Roy or his family and conducted a housing and safety check at Roy's residence and reported no concerns. DCFS never recommended any services or assessments to Roy despite the Georgia order being available to them because they never had any concerns regarding his parental fitness. Ultimately, at the hearing they *recommended* that the minors be placed with Roy. Douglas A., the paternal grandfather of K.G. and R.G.'s half-siblings, wrote a letter to the circuit court prior to its decision also recommending that K.G. and R.G. be placed with Roy. Douglas stated that he believed Roy had turned his life around and that he loved his children.

¶ 31    There is no evidence or testimony that Roy has ever harmed his children, placed them in an injurious environment, or been convicted of a significant crime. The only evidence against his parental fitness was testimony from his ex-wife and her parents, all of whom stated on the record that they had not had any direct contact with Roy in the previous 10 years. Thus, the question is whether previous sexual indiscretions which occurred 10 years prior and Roy's watching and/or participation in pornography, which is a legal activity for consenting adults, is sufficient to find a parent unfit despite all other evidence, including a recommendation for placement from DCFS who has observed the father and minors' interactions for the past year, suggests to the contrary. We find it is not and to find so is against the manifest weight of the evidence.

¶ 32    Finally, the circuit court found as a reason for unfitness that DCFS did not give Roy a service plan and thus he has not been assessed for any of the concerning behaviors. This finding is baffling to this court when viewed in light of the testimony and circumstances of this case. Roy was not the cause for the finding of neglect. Lindsay was. Thus, it would not have been readily apparent to DCFS that a service plan for Roy was necessary. DCFS observed Roy and conducted a CA/N and LEADS search, and no concerns arose. The Georgia order was known to the court and DCFS early on in these legal proceedings. It was the testimony of Hampton from DCFS that no services or assessments were recommended because based upon their interviews and observations of supervised visits, none were needed. In the temporary order entered on March 15, 2022, the circuit court indicated that mother and fathers should cooperate and undergo certain assessments, including mental health assessments and domestic violence assessments. However, Roy never presented any of these concerns and thus DCFS never recommended any of these. Hampton testified that Roy's service plan was to cooperate with them fully and work on bonding with his children. Which he did. In *In re T.D.*, 268 Ill. App. 3d 239, 247 (1994), we held that where DCFS

14

did not keep respondent apprised of the service plans, his failure to complete the tasks within those plans cannot alone support the finding of unfitness. Thus, here, where DCFS determined there was no need for a formal service plan or failed to recommend certain assessments, we cannot hold that against Roy and deem him unfit solely upon that basis.

¶ 33     "On review, a [circuit] court's dispositional fitness determination will be reversed only if the trial court's finding is against the manifest weight of the evidence." *In re A.P.*, 2013 IL App (3d) 120672, ¶ 17. "A finding is against the manifest weight of the evidence where a review of the record clearly demonstrates that the trial court should have reached the opposite result." *Id*. Here, we find that the circuit court's order is not supported by the evidence contained in the record. The central evidence relied upon by the circuit court was a 10-year-old court order from a divorce proceeding between the parents. All of Roy's "unfit" acts alleged within that Georgia order, while not condoned by this court, were legal activities. Most importantly, there was no evidence offered at the dispositional hearing as to if or how those activities would impact his ability to parent. The most recent evaluation of Roy by a licensed psychiatrist indicated that his addiction was in remission, and he was not a threat to any of his children. Finally, the most recent and relevant information available to the circuit court was that DCFS observed Roy interact with the minors for a period of approximately one year, never ordered any assessments or services for Roy as it had no concerns, and ultimately recommended the minors be placed with him. Thus, when viewing all the evidence taken as whole, the opposite conclusion is clearly apparent from that articulated in the circuit court's February 15, 2023, order finding Roy unfit. Therefore, we find the circuit court's decision is against the manifest weight of the evidence and we reverse circuit court's determination of Roy as an unfit parent.

¶ 34                          III. CONCLUSION

¶ 35    For the foregoing reasons, the portions of the circuit court's February 15, 2023, and March

3, 2023, orders finding Roy unfit as a parent are reversed and we remand for further proceedings

consistent with this ruling.


¶ 36    Reversed and remanded.